Blank Rome LLP
Attorneys for Clipper Bulk Shipping BV
405 Lexington Avenue
NewYork, New York 10174
(212) 885-5000
Jeremy J.O. Harwood
Thomas H. Belknap
Alan M. Weigel

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: March 14, 2011<br>Time: 2:00 p.m. |
| ------------------------------------------------------- | |
| In re:<br>KOREA LINE CORPORATION, | Chapter 15<br>Case No. 11-10789(REG) |
| Debtor in a Foreign Proceeding.<br>------------------------------------------------------- | |

# CLIPPER BULK SHIPPING'S LIMITED OBJECTION TO PETITIONERS' APPLICATION FOR ENTRY OF PRELIMINARY INJUNCTION

Pursuant to the Court's Order to Show cause dated February 28, 2011, CLIPPER BULK SHIPPING NV ("Clipper") respectfully submits this Objection to the application of Petitioner Korea Line Corporation ("KLC") seeking entry of a preliminary injunction to the extent that it seeks to stay certain consolidated arbitration proceedings currently pending in New York under the caption *In the Matter of Clipper Bulk Shipping N.V. v. Korea Line Corp. (The FOMALHAUT)*. The arbitration is a consolidated maritime arbitration currently proceeding among four parties in a chain of charters for the vessel M/V FOMALHAUT. The arbitration is proceeding pursuant to a consolidated arbitration agreement signed by all parties to the proceedings, including KLC. KLC is an intermediate party in the proceedings, with all contracts up and down the chain being on identical (*i.e.*, "back to back") terms except as to the daily hire (*i.e.*, rental) rate. KLC is therefore merely a "pass through" entity in respect of the claims except

1

to the extent of any hire differential that may be passed up or down the chain. Greig Star Shipping A.S. ("Star"), the ultimate subcharterers in the proceedings, has assumed KLC's defense in respect of all claims. The arbitration is substantially progressed, with four fact and expert witnesses already having testified before the panel. No further witness hearings are anticipated at this time. KLC has security from Star in respect of the claims which Clipper is pursuing down the charter chain, and it has security from Clipper in respect of any potential claim for costs against it in the proceedings.

## FACTS

The facts are set out in the accompanying Declaration of Thomas H. Belknap, Jr., Esq. By charter party dated June 26, 2006, Clipper time-chartered the M/T FOMALHAUT (the "Vessel") from its owner, Sibaships Asia Pte. (the "Head-Charter"). By charter dated September 19, 2006, Clipper time-chartered the Vessel to petitioner KLC (the "Charter"). KLC further sub-time-chartered the Vessel to Star under a time-charter dated March 1, 2007. Star further sub-time-chartered the Vessel to Atlas Shipping AS ("Atlas"). The Head Charter, the Charter and the two sub-charters are all on back-to-back terms except as to the daily hire rate.

During the course of the charters, certain disputes arose concerning the supply of contaminated bunkers to the Vessel. Additionally, disputes arose concerning certain speed and performance adjustments to hire due under the Charter. Specifically, Clipper has asserted a claim against KLC for damages in the amount of $470,949.72 allegedly caused by the provision of off-specification bunkers to the Vessel by a sub-charterer under KLC, including damage caused to the Vessel's main engine, costs to off-load and replace the bunkers and clean the tank, and attending off-hire and related expenses (the "Bunker Claim").

Also, after redelivery of the Vessel to the Head Owner by Clipper, Clipper asserted a claim against KLC for unpaid hire in the amount of $362,177.15 which was improperly withheld by KLC based on the sub-charterer's mis-analysis of the Vessel's speed and performance during the charter (the "Speed Claim").

KLC passed both of these claims down the charter chain to Star on the basis that, as between those two parties, Star was liable. Star, in turn, passed the Bunker Claim (but not the Speed Claim, which terminates with them) down the charter chain to Atlas. Ultimately, Clipper demanded arbitration of KLC and that demand was repeated down the charter chain. KLC has asserted a small counterclaim against Clipper for alleged overpayment of hire in the about of $19,140.05.

By consolidation agreement dated February 3, 2010 and amended May 5, 2010, Clipper, KLC, Star and Atlas consented to submit the Bunker Claims and the Speed Claim to consolidated arbitration proceedings in New York before a Panel of three arbitrators (the "Arbitration"). (Belknap Dec. Ex. A). Star subsequently assumed KLC's defense in these consolidated proceedings and Atlas assumed Star's defense with respect to the bunker claim but not as to the speed claim.

In a matter captioned *Korea Line Corporation v. Grieg Star Shipping A.S.*, 08 cv 10297 (S.D.N.Y.), KLC obtained a Rule B maritime attachment of certain property of Star. It is Clipper's understanding that a bond was substituted on behalf of Star for the attached property. Upon due demand by Clipper, KLC's protection and indemnity underwriter, Britannia Steam Ship Insurance Association Limited issued a "letter of undertaking" in favor of Clipper in the amount of $313,910. Additionally, Travelers Casualty and Surety Company of America issued a bond in favor of Clipper in the amount of $585,824.82. Clipper, in turn, put $61,929.66 in

3

escrow as security for KLC's counterclaim and/or potential claim for fees and costs in the arbitration.

Before the first hearing, by letter dated September 29, 2010, KLC's counsel in respect of the arbitration proceedings, Messrs. Cichanowicz, Callan, Keane, Vengrow & Textor LLP, confirmed to the Panel that Star had agreed to assume KLC's defense and that, accordingly, KLC would not be separately represented in the proceedings. His letter also outlines the "differential" claims which KLC is seeking up and down the charter chain. (Belknap Dec. Ex. B).

The arbitration proceeded, with document submissions and the testimony of four witnesses being presented to the Panel in October 2010 and January 2011. Clipper does not anticipate that any further witness hearings will be required by any party. Accordingly, all that remains is for the parties to make their final submissions to the Panel and for an award to be issued.

## **OBJECTION**

In deciding whether "litigation should be permitted to continue in another forum," the Second Circuit has cataloged a dozen factors that the Court should examine for relevance. *Sonnax Industries, Inc. v. Tri Component Prods. Corp. (In re Sonnax Industries, Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990). These factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it in the other forum; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim

4

arising from the other action is subject to equitable subordination; (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *Id.*

As is detailed above, exempting the arbitration from the stay would have virtually no impact on KLC and would not interfere with the bankruptcy case. KLC's sub-charterer, Star, has assumed full responsibility for defending KLC. KLC has presented no exhibits or witnesses and has taken the position that the claims are merely "pass-through" claims given the back-to-back nature of the charter parties. Thus, even if KLC is found liable to Clipper, KLC would have an essentially equivalent right of recovery against Star, and neither the estate nor the interests of other creditors would be harmed by permitting the arbitration to proceed to its conclusion. KLC is secured in respect of any claims either up or down the charter chain. The arbitration is substantially progressed, with witness testimony and documentation already submitted to the panel. Moreover, the parties specifically agreed to arbitrate disputes, and there can be no doubt that the arbitration tribunal—as "commercial men" in the field of shipping—have specialized knowledge that would allow them to better analyze the claims and defenses at issue. In view of the foregoing, Clipper respectfully submits that the Arbitration should be exempt from the stay and the preliminary injunction and should be allowed to proceed.

## **CONCLUSION**

The Arbitration styled *In the Matter of Clipper Bulk Shipping v. Korea Line Corp. (The FOMALHAUT)* should be permitted to continue and should not be subject to the preliminary injunction, and Clipper should be granted such other and further relief as the Court may deem just and equitable.

Dated:  New York, N. Y.
        March 10, 2011

BLANK ROME, LLP

By /s/ *Jeremy J.O. Harwood*
  Jeremy J. O. Harwood
  Thomas H. Belknap, Jr.
  Alan M. Weigel
  405 Lexington Ave.
  New York, NY  10174-0208
  Tel.:  (212) 885-5000
  Fax:  (212) 885-5001
  jharwood@blankrome.com
