UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                             :

In re:                                                      :        Chapter 15

Korea Line CORPORATION                   :        Case No. 11-10789 (REG)

                 Debtor in a                 :
                 Foreign Proceeding.     :

-----------------------------------------------------------x

## DECLARATION OF JIN BANG LEE IN SUPPORT OF TURNOVER MOTION

Jin Bang Lee, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a receiver ("**Receiver**") and foreign representative of Korea Line Corporation ("**Korea Line**") a company undergoing rehabilitation before the Seoul Central District Bankruptcy Court (4th Division) (the "**Korean Court**"), case number 2011 Hoe-Hap 14 (the "**Korean Proceeding**") pursuant to the Korean Debtor Rehabilitation and Bankruptcy Act ("**DRBA**").

2. I respectfully submit this declaration in support of the Receivers' motion for an order pursuant to 11 U.S.C. §§ 1507, 1521(a)(5) and 1521(b) of the Bankruptcy Code vacating an attachment of Korea Line property and directing that the $706,000.00 of Korea Line's funds being held by the District Court for the Central District of California ("**California Court**") be released and turned over to the Receivers for administration in the Korean Proceeding under the supervision of the Korean Court.

## Background

3.  Korea Line is a company organized under the laws of the Republic of Korea, with a registered address at 135-878 Korea Line Corporation Building 145-9 Samsung-dong, Gangnam-gu, Seoul, Korea. Since 1968, it has engaged in the marine transport and port logistics businesses. Korea Line has been a publicly listed company on the Korean Stock Exchange since 1992.

4.  Due to the global economic recession caused by the global financial crisis of 2008, the Baltic Dry Index ("BDI") steeply dropped from 11,793 as of May 2008 to 1,400 as of January 2011, which in turn caused Korea Line's operating expenses (aggregate of direct shipping expenses such as fuel costs, port charges, etc. and charter hires) to exceed its operating income, causing the business index to deteriorate significantly. In addition, many customers who had chartered ships from Korea Line on a long-term basis pursuant to demise charter party contracts did not pay the charter hires or returned the chartered ships early, causing a substantial increase in delinquent claims and losses.

## The Korean Proceeding and the Chapter 15 Case

5.  Korea Line applied for rehabilitation in Korea under the DRBA on January 25, 2011 (the "**Rehabilitation Application**"). The Korean Court received the Rehabilitation Application and issued a stay order prohibiting the attachment and execution of Korea Line's property on January 26, 2011 (the "**Stay Order**"). Also on January 26, 2011, the Korean Court issued an asset preservation order prohibiting the debtor from, *inter alia,* transferring Korea Line property and leasing assets (the "**Preservation Order**").

6.  Upon entry of the Stay Order and Preservation Order, all of Korea Line's creditors were prohibited from attaching or executing upon Korea Line's assets. I understand that any

attachment or execution of Korea Line assets made after the issuance of the Stay Order and Preservation Order is void, and would be vacated under Korean law.

7. On February 15, 2011, the Korean Court issued a commencement order commencing the rehabilitation proceeding with respect to Korea Line (the "**Commencement Order**").

8. Upon commencement of the rehabilitation proceeding, new attachments by creditors over the properties of a debtor company are prohibited. DRBA Art. 58. para 1. The key principle underlying the DRBA is *in pari passu* - that like creditors should be treated alike. No creditor should be permitted to gain an unfair advantage by attaching or executing upon property in the United States.

9. If any creditor is permitted to maintain a post-insolvency attachment or execution upon Korea Line property, it will jeopardize the Receivers' ability to effect an equitable distribution of assets in the Korean Proceeding

10. On February 25, 2011, the Receivers of Korea Line petitioned this Court to enter an order (i) recognizing the Korean rehabilitation of Korea Line as a foreign main proceeding pursuant to chapter 15 of the Bankruptcy Code; (ii) granting automatic relief pursuant to section 1520 of the Bankruptcy Code; (iii) granting other and additional relief pursuant to sections 1507 and 1521(a) and (b) of the Bankruptcy Code.

11. On April 20, 2011, this Court entered an order granting all of the relief requested by the Receivers, subject to certain stipulations and exceptions agreed to by Korea Line and various creditors not relevant to this motion.

## The California Attachment

12. On February 11, 2011, World Fuel Services (Singapore) Pte Ltd. ("**World Fuel**"), commenced an action styled *World Fuel Services (Singapore) Pte. Ltd. v. Korea Line Corp., et al.*, No. 11-cv-01334 (MMM) (MAN) (C.D.Cal.), and Byatt International S.A. ("**Byatt**") and Yanam Services S.A. ("**Yanam**") commenced a related action styled *Byatt International S.A. et al. v. Korea Line Corp., et al.*, No. 11-cv-1632 (MMM) (MAN) (C.D. Cal.) (collectively referred to as the "**Bunker Attachment Actions**").

13. On February 11, 2011, World Fuel obtained a Writ of Attachment and Garnishment (the "**World Fuel Attachment**") pursuant to Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure from the California Court as security for its claim against Korea Line.

14. Pursuant to the World Fuel Attachment, on February 12, 2011, certain bunkers, fuel oil and diesel oil (collectively the "**Attached Bunkers**") were attached on board the Korea Line time chartered vessel M/V NEW HORIZON.

15. On February 25, 2011, Byatt and Yanam obtained a Writ of Attachment and Garnishment pursuant to Supplemental Admiralty Rule B, Federal Rules of Civil Procedure, in order to obtain security for their claims against Korea Line (the "**Byatt/Yanam Attachment**" and together with the World Fuel Attachment, the "**Attachments**").

16. Pursuant to the Byatt/Yanam Writ of Attachment, on February 25, 2011, the Attached Bunkers on board the M/V NEW HORIZON were further attached.

17. On February 28, 2011, this Court issued a Temporary Restraining Order ("**TRO**") which, *inter alia*, temporarily stayed the Bunker Attachment Actions. [D.E. #7].

18. On March 3, 2011, this Court issued an order lifting the TRO for the sole purpose of authorizing the Receivers to deposit in the California Court's registry the amount of $706,000.00 (the "**Court Registry Deposit**") as substitute security for the Attachments so as not to inhibit Korea Line's trading activity [D.E. #12] (the "**Substitute Security Authorization Order**").

19. The Substitute Security Authorization Order specifically provides that the Receivers' agreement "to make the Court Registry Deposit or to remove the Attached Bunkers or take other action, is made without prejudice to their right to assert any claims, defenses, legal or factual arguments regarding the propriety of the Attachments or any of the Attaching Plaintiffs' claims...."

20. The Substitute Security Authorization Order further provides that "[w]hile this Chapter 15 case is pending, the Bankruptcy Court shall have and retain jurisdiction over the disposition of the Substitute Security, any and all rights by any party to the substitute security and all disputes arising out of this Order."

21. Also on March 3, 2011, the California Court entered an order directing Korea Line to deposit $706,000.00 into the California Court's registry as substitute security for the Attachments, and directing the release of the Attached Bunkers (the "**California Substitute Security Order**").

22. The California Substitute Security Order likewise provides that the Court Registry Deposit is "without prejudice to any and all claims, rights, defenses and objections KLC may have with regard to World Fuel's claims against KLC and/or the Writs of Attachment issued by the Court, none of which shall be regarded as waived. This Order and the deposit of the Court Registry Funds by KLC are also without prejudice to any and all claims, rights, defenses and

objections of KLC in the United States Bankruptcy Court for the Southern District of New York (Case No. 11-10789) (REG)), none of which shall be regarded as waived, and are subject to further orders of the Bankruptcy Court."

23. The $706,000.00 posted by Korea Line as substitute security remains in the custody of the California Court. The Bunker Attachment Actions are stayed.

24. The Attachments were filed after the Korean Proceeding was initiated and after the Stay Order was issued by the Korean Court. Therefore, the Attachments violate the Korean Stay Order.

25. If maintained, the California Action and the Attachments will give those creditors an inappropriate preference over similarly situated creditors and prejudice creditors that did not seek to attach Korea Line assets in the United States after the Stay Order was issued by the Korean Court on January 26, 2011.

26. Under the circumstances, The Receivers respectfully request this Court to grant comity to the Stay Order and the Korean Proceeding by directing that the $706,000 be returned to Korea for administration and distribution in the Korean Proceeding in accordance with Korean law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 25, 2011

_____
Jin Bang Lee

#10351604_v1