UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:                                             Chapter 15

Korea Line CORPORATION,                            Case No. 11-10789 (REG)

              Debtor in a
            Foreign Proceeding.


-----------------------------------------------------------x


### MEMORANDUM OF LAW IN SUPPORT OF TURNOVER MOTION

HOLLAND & KNIGHT LLP

By:  /s/James H. Power
James H. Power, Esq.
Barbra R. Parlin, Esq.
Warren E. Gluck, Esq.
31 West 52nd Street
New York, New York 10019
Tel.: (212) 513-3200
Fax: (212) 385-9010

*Counsel for the Petitioner,*
*the Receivers of Korea Line Corporation.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

FACTS ............................................................................................................................................2

ARGUMENT

    TURNOVER OF THE $706,000.00 IS MANDATED HERE ...........................................8

A.   THIS COURT HAS THE STATUTORY POWER TO VACATE
THE ATTACHMENTS AND ORDER TURNOVER OF THE ATTACHED
FUNDS TO THE RECEIVERS ........................................................................................8

B.   INTERNATIONAL COMITY SUPPORTS VACATING THE ATTACHMENTS .............................9

C.   THE RECEIVERS ARE ENTITLED TO TURNOVER OF THE ATTACHED
FUNDS PURSUANT TO §§ 1521(A)(5) AND 1521(B) ........................................................13

    1.   Just Treatment Will be Afforded to All Parties. ....................................................13

    2.   U.S. Claimholders Will Not Be Inconvenienced. ..................................................14

    3.   Turnover will Prevent, Not Cause, the Preferential
Disposition of Korea Line's Property ...................................................................14

    4.   U.S. and Korean Law are Substantially in Accord;
the Korean Stay on Attachments is Entitled to Comity. ........................................15

CONCLUSION ...............................................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Byatt International S.A. et al. v. Korea Line Corp., et al.*,
No. 11-cv-1632 (MMM) (MAN) (C.D. Cal.) ............................................................. 6

*Canada So. Ry. Co. v. Gebhard*,
109 U.S. 527 (1883) ................................................................................................. 14

*Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB*,
773 F.2d (2d Cir. 1985) ................................................................................. 10, 13, 16

*In re Atlas Shipping A/S*,
404 B.R. 726 (Bankr. S.D.N.Y. 2009) ............................................................. passim

*In re Axona Intern. Credit & Commerce, Ltd.*,
88 B.R. 597 (Bankr. S.D.N.Y. 1988), *aff'd,* 115 B.R. 442 (S.D.N.Y. 1990) ........... 15

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund Ltd.*,
374 B.R. 122 (Bankr. S.D.N.Y. 2007) ..................................................................... 10

*In re Board of Directors Compania General Combustibles, S.A.*,
269 B.R. 104 (Bankr. S.D.N.Y. 2001) ..................................................................... 15

*In re Culmer*,
25 B.R. 621 (Bankr. S.D.N.Y. 1982) ................................................... 11, 12, 13, 14

*In re Davis*,
191 B.R. 577 (Bankr. S.D.N.Y. 1996) ..................................................................... 15

*In re Metzeler*,
78 B.R. 674 (Bankr. S.D.N.Y. 1987) ......................................................................... 9

*In re Milovanovic*,
357 B.R. 250 (Bankr. S.D.N.Y. 2006) ..................................................... 10, 13, 16

*In re Rosacometta, S.r.l*,
336 B.R. 557 (Bankr. S.D. Fla. 2005) ..................................................................... 13

*Israel British Bank (London), Ltd. v. Federal Deposit Insurance Corp.*,
536 F.2d 509 (2d Cir.), *cert. denied sub nom. Bank of the Commonwealth v. Israel-British Bank (London) Ltd.,* 429 U.S. 978 (1976) ..................................................... 12

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
825 F.2d 709 (2d. Cir. 1987) ..................................................................... 9, 11, 16

**STATUTES**

11 U.S.C. § 1501(a)(3)............................................................................11

11 U.S.C. § 1507.........................................................................8, 9, 13

11 U.S.C. §§ 1521.................................................................8, 13, 14, 22

Jin Bang Lee and Byung Nam Choi, duly appointed receivers ("**Receivers**" or "**Petitioners**") of Korea Line Corporation ("**Korea Line**" or the "**Foreign Debtor**"), submit:

(i) this memorandum of law,

(ii) the accompanying Declaration of Jin Bang Lee dated May 25, 2011 ("**Lee II Declaration**"),

(iii) the accompanying Declaration of Tae Soo Jung dated May 25, 2011 ("**Jung II Declaration**"),

in support of their motion for an order pursuant to 11 U.S.C. §§ 1507, 1521(a)(5) and 1521(b) of the Bankruptcy Code (a) vacating an Attachment of Korea Line property (described below), and (b) directing that the $706,000.00 of Korea Line's funds being held by the District Court for the Central District of California ("**California Court**") be released and turned over to the Receivers for administration in the Korean Proceeding (defined below) under the supervision of the Korean Court (defined below).

## PRELIMINARY STATEMENT

This Court should grant the relief requested. In cases brought under both Chapter 15 of the Bankruptcy Code and former Section 304, Bankruptcy Courts have routinely vacated pre-judgment attachments of an insolvent foreign debtor's assets in the United States that were entered after the foreign insolvency proceeding was filed. They have ordered that such assets be turned over to the foreign debtor's representative for administration in the foreign insolvency proceeding so as to avoid piecemeal or preferential distribution of the estate's assets and in furtherance of the principles of international comity. This case should be no different.

International comity, the guiding principal underlying Chapter 15, mandates cooperation with the Receivers and the Seoul Central District Bankruptcy Court (4th Division) (the "**Korean Court**").  Under applicable Korean law, the post-rehabilitation filing Attachments are void as they were entered in violation of the stay order issued by the Korean Court.

Likewise, the factors applicable to relief under sections 1507 and 1521 - (1) just treatment of all holders of claims or interests in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in the foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; and, (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by the Bankruptcy Code – all favor turnover of the funds at issue here.

<u>FACTS</u>

**Korea Line's Insolvency and the Korean Proceeding**

Korea Line is a company organized under the laws of the Republic of Korea, with a registered address at 135-878 Korea Line Corporation Building 145-9 Samsung-dong, Gangnam-gu, Seoul, Korea.  Since 1968, it has engaged in the marine transport and port logistics businesses.  Lee II Declaration ¶ 3.

Due to the economic recession caused by the global financial crisis of 2008, the Baltic Dry Index ("BDI") steeply dropped from 11,793 as of May 2008 to 1,400 as of January 2011, which in turn caused Korea Line's operating expenses (aggregate of direct shipping expenses such as fuel costs, port charges, etc. and charter hires) to exceed its operating income, causing the business index to deteriorate significantly.  In addition, many customers who had chartered ships from Korea Line on a long-term basis pursuant to demise charter party contracts did not pay the charter hires or returned the chartered ships early, causing a substantial increase in delinquent claims and losses. Lee II Declaration ¶ 4.

Korea Line applied for rehabilitation in Korea under the DRBA on January 25, 2011 (the "**Rehabilitation Application**").[1] The Korean Court issued a stay order prohibiting the attachment and execution of Korea Line's property on January 26, 2011 (the "**Stay Order**").[2] Also on January 26, 2011, the Korean Court issued an asset preservation order prohibiting the debtor from, *inter alia,* transferring Korea Line property and leasing assets (the "**Preservation Order**").[3] Lee II Declaration ¶ 5 and Jung II Declaration ¶ 4.

On February 15, 2011, the Korean Court issued a commencement order commencing the rehabilitation proceeding with respect to Korea Line (the "**Commencement Order**").[4] Jung II Declaration ¶ 5 and Lee II Declaration ¶ 7.

**Korean Insolvency Law**

Under the terms of the Stay Order and Preservation Order, all of Korea Line's creditors are prohibited from attaching or executing upon Korea Line's assets. Under Korean law, any attachment or execution of Korea Line assets made after the issuance of the Stay Order and Preservation Order constitutes a violation of those orders, is void, and would be vacated[5]. Jung II Declaration ¶ 6.

Upon the filing of a rehabilitation proceeding and entry of a stay order such as the Stay Order issued here, new attachments by creditors over the properties of a debtor company are

---

[1] See Declaration of Jin Bang Lee, D.E. #4, Ex. 1 (**"Lee I. Declaration"**).

[2] See I Declaration Ex. 2.

[3] See I Declaration Ex. 3.

[4] See Lee I. Declaration Ex. 4.

[5] In the event a stay order is rendered under the Debtor Rehabilitation and Bankruptcy Act, creditors are prohibited from attaching or enforcement against the assets of a debtor, and under Article 58(1) of the same Act if a commencement order for rehabilitation is rendered in respect of a debtor, the creditors may not proceed with enforcement against the assets of the debtor.

prohibited.   DRBA Art. 58. para 1.  Lee II Declaration ¶ 8.  This is akin to a temporary restraining order issued under U.S. law.

The key principle underlying the Debtor Rehabilitation and Bankruptcy Act ("**DRBA**") is *in pari passu* - that like creditors should be treated alike[6].  No creditor should be permitted to gain an unfair advantage by attaching or executing upon property in the United States.   Lee II Declaration ¶ 8 and Jung II Declaration ¶ 8.

If any creditor is permitted to maintain a post-insolvency attachment or execution upon Korea Line property, it will jeopardize the Receivers' ability to effect an equitable distribution of assets in the Korean Proceeding.  Lee II Declaration ¶ 9.

The DRBA and its provisions are similar in many respects to the United States Bankruptcy Code. Jung II Declaration ¶ 8.  Under Korean rehabilitation procedures, creditors may only obtain satisfaction of claims pursuant to a rehabilitation plan, and creditors may not obtain satisfaction in any other manner. Jung II Declaration ¶ 7.

If satisfaction of a particular creditor's claim (including through court enforcement proceedings) unreasonably favors a creditor in relation to other creditors, the debtor's receiver may exercise the right of repudiation and request the creditor's return of the relevant proceeds. Jung II Declaration ¶ 7 (citing Articles 100 and 131 of DRBA).

Therefore, under Korean rehabilitation proceedings, a creditor may not obtain benefits unreasonably through enforcement against a debtor's assets. Jung II Declaration ¶ 7.

Korean Courts are routinely involved in cases where foreign individuals or entities appear as litigants. Jung II Declaration ¶ 9.  The Korean Courts are open to all and all litigants are

---

[6] Under Article 243 of DRBA, one of the criteria for court approval of rehabilitation plan is "that the rehabilitation plan be fair and equitable"; under Article 218 of DRBA, "in determining the terms of the rehabilitation plan, like creditors shall be treated in like terms."  As such, the DRBA provides in principle that a class of creditors be treated in like terms.

treated justly and fairly regardless of their nationality. The Korean Court system is sophisticated, fair and equitable. Jung II Declaration ¶ 10.

Upon rendering of commencement order, the receiver will prepare the rehabilitation plan which provides for the terms of satisfaction in respect of creditors' claims and thereafter convene a creditors' meeting which puts the rehabilitation plan to a creditors' vote. Among secured rehabilitation creditors, 3/4 or more of the secured rehabilitation creditors must vote affirmatively in favor of the rehabilitation plan, whilst 2/3 or more of rehabilitation creditors must vote affirmatively. If the threshold for affirmative votes is met and the court determines that the rehabilitation plan satisfies the principles of equity and fairness, with other relevant approval conditions being satisfied, the court renders approval in respect of the rehabilitation plan which makes effective the amended terms for satisfaction of claims. Jung II Declaration ¶ 11.

**The Chapter 15 Proceeding**

On February 25, 2011, the Receivers of Korea Line petitioned this Court to enter an order (i) recognizing the Korean rehabilitation of Korea Line as a foreign main proceeding pursuant to chapter 15 of the Bankruptcy Code; (ii) granting automatic relief pursuant to section 1520 of the Bankruptcy Code; (iii) granting other and additional relief pursuant to sections 1507 and 1521(a) and (b) of the Bankruptcy Code. Lee II Declaration ¶ 10.

On April 20, 2011, this Court entered an order granting all of the relief requested by the Receivers, subject to certain stipulations and exceptions agreed to by Korea Line and various creditors that are not relevant to this motion. Lee II Declaration ¶ 11.

**The California Attachment**

On February 11, 2011, World Fuel Services (Singapore) Pte Ltd. ("**World Fuel**"), commenced an action styled *World Fuel Services (Singapore) Pte. Ltd. v. Korea Line Corp., et*

*al.*, No. 11-cv-01334 (MMM) (MAN) (C.D.Cal.), and Byatt International S.A. ("**Byatt**") and Yanam Services S.A. ("**Yanam**") commenced a related action styled *Byatt International S.A. et al. v. Korea Line Corp., et al.*, No. 11-cv-1632 (MMM) (MAN) (C.D. Cal.) (collectively referred to as the "**Bunker Attachment Actions**"). Lee II Declaration ¶ 12.

Also on February 11, 2011, World Fuel obtained a Writ of Attachment and Garnishment (the "**World Fuel Attachment**") pursuant to Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure from the California Court as security for its claim against Korea Line. Lee II Declaration ¶ 13.

Pursuant to the World Fuel Attachment, on February 12, 2011, certain bunkers, fuel oil and diesel oil (collectively the "**Attached Bunkers**") were attached on board the Korea Line time chartered vessel M/V NEW HORIZON. Lee II Declaration ¶ 14.

On February 25, 2011, Byatt and Yanam obtained a Writ of Attachment and Garnishment pursuant to Supplemental Admiralty Rule B, Federal Rules of Civil Procedure, in order to obtain security for their claims against Korea Line (the "**Byatt/Yanam Attachment**" and together with the World Fuel Attachment, the "**Attachments**"). Lee II Declaration ¶ 15.

Pursuant to the Byatt/Yanam Writ of Attachment, on February 25, 2011, the Attached Bunkers on board the M/V NEW HORIZON were further attached. Lee II Declaration ¶ 16.

**The Substitute Security**

On February 28, 2011, this Court issued a Temporary Restraining Order ("**TRO**") which, *inter alia*, temporarily stayed the Bunker Attachment Actions. [D.E. #7]. Lee II Declaration ¶ 17

On March 3, 2011, this Court issued an order lifting the TRO for the sole purpose of authorizing the Receivers to deposit in the California Court's registry the amount of $706,000.00 (the "**Court Registry Deposit**") as substitute security for the Attachments so as not to inhibit

Korea Line's trading activity [D.E. #12] (the "**Substitute Security Authorization Order**"). Lee II Declaration ¶ 18.

The Substitute Security Authorization Order specifically provides that the Receivers' agreement "to make the Court Registry Deposit or to remove the Attached Bunkers or take other action, is made without prejudice to their right to assert any claims, defenses, legal or factual arguments regarding the propriety of the Attachments or any of the Attaching Plaintiffs' claims…." Lee II Declaration ¶ 19.

The Substitute Security Authorization Order further provides that "[w]hile this Chapter 15 case is pending, the Bankruptcy Court shall have and retain jurisdiction over the disposition of the Substitute Security, any and all rights by any party to the substitute security and all disputes arising out of this Order." Lee II Declaration ¶ 20.

Also on March 3, 2011, the California Court entered an order directing Korea Line to deposit $706,000.00 into the California Court's registry as substitute security for the Attachments, and directing the release of the Attached Bunkers (the "**California Substitute Security Order**"). Lee II Declaration ¶ 21.

The California Substitute Security Order likewise provides that the Court Registry Deposit is "without prejudice to any and all claims, rights, defenses and objections KLC may have with regard to World Fuel's claims against KLC and/or the Writs of Attachment issued by the Court, none of which shall be regarded as waived. This Order and the deposit of the Court Registry Funds by KLC are also without prejudice to any and all claims, rights, defenses and objections of KLC in the United States Bankruptcy Court for the Southern District of New York (Case No. 11-10789) (REG)), none of which shall be regarded as waived, and are subject to further orders of the Bankruptcy Court." Lee II Declaration ¶ 22.

The $706,000.00 ("**Funds**" or **"Attached Funds"**) posted by Korea Line as substitute security remain in the custody of the California Court. The Bunker Attachment Actions are stayed. Lee II Declaration ¶ 23.

## ARGUMENT

### TURNOVER OF THE $706,000.00 IS MANDATED HERE

The Attached Funds are properly part of the Korea Line estate and should be turned over to the Receivers in Korea. The Attachments were filed after the Korean Proceeding was initiated and after the Stay Order was issued by the Korean Court. Lee II Declaration ¶ 24.

Turnover of the $706,000.00 requires that the Attachments be dissolved. This dissolution is not requested pursuant to the "avoidance" provisions of the United States Bankruptcy Code, but rather mandated by (i) 11 U.S.C. §§ 1521, 11 U.S.C. § 1507, and (ii) substantial United States precedent applying the principles of international comity in virtually identical situations. In addition all the factors for granting relief under 1507 and 1521 are met here.

**A. This Court Has the Statutory Power to Vacate the Attachments and Order Turnover of the Attached Funds to the Receivers**

11 U.S.C. § 1521(a)(5) permits this Court to entrust the administration or realization of all or part of Korea Line's assets within the United States to the foreign representative.[7] 11 U.S.C. § 1521(b) provides for the extra-territorial turnover of Korea Line's assets in the United States to the foreign representative in Korea so long as United States creditors are sufficiently

_____

[7] 11 U.S.C. § 1521(a) provides in pertinent part as follows: "Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief including…. (5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative…."

protected.[8] Moreover, 11 U.S.C. § 1507 permits this Court to provide "additional assistance" to Petitioners with the same, explicit, caveat.[9]

In *In re Atlas Shipping A/S*, 404 B.R. 726, 740-42 (Bankr. S.D.N.Y. 2009), this Court held that §§ 1521(a)(5) and 1521(b) are sufficient statutory bases to use to vacate attachments entered after the foreign debtor's proceeding was filed of an insolvent foreign debtor's assets located in the U.S., entrust those assets to the foreign representative and permit that representative to turn them over to the jurisdiction of a foreign insolvency proceeding previously recognized under chapter 15. Thus, a clear statutory basis exists for this Court to grant the requested turnover relief.

**B. International Comity Supports Vacating the Attachments**

The precise relief requested here has been recently granted by this Court and twice affirmed by the Second Circuit Court of Appeals pursuant to Chapter 15 and §304[10]. *See Victrix*

---

[8] 11 U.S.C. § 1521(b) provides in pertinent part as follows: "Upon recognition of a foreign proceeding, whether main or nonmain, the court may, at the request of the foreign representative, entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative…provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected."

[9] 11 U.S.C. § 1507 provides: "(a) Subject to the specific limitations stated elsewhere in this chapter the court, if recognition is granted, may provide additional assistance to a foreign representative under this title or under other laws of the United States. (b) In determining whether to provide additional assistance under this title or under other laws of the United States, the court shall consider whether such assistance, consistent with the principles of comity, will reasonably assure – (1) just treatment of all holders of claims against interests in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns."

[10] In *Atlas*, Judge Glenn held that the legislative history confirms that the provisions of chapter 15 are to be read consistently with prior law under § 304 and that Congress is presumed not to have overturned precedent when amending the Bankruptcy Code. *Id.* at 744 (citing *In re Metzeler*, 78 B.R. 674, 679 (Bankr. S.D.N.Y. 1987)). Meanwhile, it cannot be disputed that § 304(b)(2) permitted a bankruptcy court to act as a forum for the assertion in the United States of avoiding powers and similar causes of action that are vested in the foreign representative under otherwise applicable law. *See* Collier on Bankruptcy ¶ 304.06; *Metzeler,* 78 B.R. at 680 ("Congress intended that foreign preference and fraudulent transfer actions seeking to recover property located here are a sufficient basis on which to ground a § 304 petition…").

*S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 713 (2d. Cir. 1987) (post-Swedish insolvency attachment of debtor assets vacated and attorneys fees awarded in connection with vacatur under Chapter 15's predecessor, 11 U.S.C. 304); *Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB,* 773 F.2d at 459 (2d Cir. 1985) (post-foreign insolvency Rule B attachment vacated and property turned over); in *In re Atlas Shipping A/S*, 404 B.R. 726, 735-737 (Bankr. S.D.N.Y. 2009) (pre- and post-foreign insolvency Rule B attachments vacated and assets turned over); *In re Milovanovic,* 357 B.R. 250 (Bankr. S.D.N.Y. 2006) (post-foreign insolvency New York attachment vacated and funds turned over).

The Attachments at issue here are virtually identical to the attachments in *Victrix, Cunard, Atlas*, and *Milovanovic* and thus should command the same result.

The overriding philosophy of Chapter 15, as well as its predecessor the former, §304, is deference to foreign insolvency proceedings and the avoidance of the piecemeal distribution of the debtor's estate underlying both statutes. *See, e.g., Atlas,* 404 B.R. at 726; *Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB,* 773 F.2d 452, 455 (2d Cir. 1985).

If maintained, the California Action and the Attachments will give those creditors an inappropriate preference over similarly situated creditors and prejudice creditors that did not seek to attach Korea Line assets in the United States after the Stay Order was issued by the Korean Court on January 26, 2011. Lee II Declaration ¶ 25.

Unlike §304 however, and "[u]nique to the Bankruptcy Code," Chapter 15 contains a statement of purpose: "'to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency.'" *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund Ltd.*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007) (quoting 11 U.S.C. § 1501), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008). Among the

express objectives of Chapter 15 is to promote the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor . . ." 11 U.S.C. § 1501(a)(3).

The principles underlying international comity in the context of cross-border insolvencies have remained largely unchanged for more than a century. For example, in 1982, Judge Lifland relied heavily on the following passage from an 1888 Harvard Law Review article to support his decision to dissolve New York creditors' various interim remedies – including attachments - and direct turnover of the foreign debtor's assets to a Bahamian liquidation proceeding:

> 'It is obvious that, in the present state of commerce and of communication, it would be better in nine cases out of ten that all settlements of insolvent debtors with their creditors should be made in a single place, better for the creditors, who would thus share alike and better for the debtor because all his creditors would be equally bound by his discharge.' Lowell, John, *Conflict of Laws as Applied to Assignments for Creditors,* 1 Harv.L.Rev. 258, 264 (1888).

*See In re Culmer*, 25 B.R. 621, 633 (Bankr. S.D.N.Y. 1982).

"Federal courts generally extend comity whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy." *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 713 (2d. Cir. 1987) (citations omitted).

According to Judge Lifland, "courts in New York have even more narrowly construed the exceptions to the comity doctrine, declaring: '[f]oreign based rights should be enforced unless the judicial enforcement of such a [right] would be the approval of a transaction which is inherently vicious, wicked or immoral, and shocking to the prevailing moral sense.'" *Culmer*, 25 B.R. at 629 (citing *Intercontinental Hotels Corp. v. Golden,* 15 N.Y.2d 9, 13, 254 N.Y.S.2d 527, 529 (1964) and *Loucks v. Standard Oil Co.,* 224 N.Y. 99, 111, 120 N.E. 198, 202 (1918)).

Hence, the principle of comity dictates that the Attached Funds <u>should</u> be turned over to the Korean Proceeding regardless of whether the attachments would be upheld under Korean law, unless this Court finds that Korean law or the Korean Proceeding violate a fundamental public policy of the United States.

The Korean law's prohibition on attachments of a debtor's property after the initiation of insolvency proceedings does not violate any public policy of the United States. Indeed, as set forth below, the Bankruptcy Code contains similar protections.

Turnover of the Attached Funds to the Receivers for administration in Korean Proceeding will not prejudice any creditor's rights to assert their claims in the Korean Proceeding. By contrast, permitting World Fuel, Byatt and Yanam to maintain attachment in violation of the Korean Stay order "would grant them preferences to which they are not entitled" under Korean law. *See Culmer,* 25 B.R. at 629 (further observing that bankruptcy courts are "not obliged to protect the positions of fast-moving American and foreign attachment creditors over the policy favoring uniform administration in a foreign court") (citing *Banque de Financement, S.A. v. First National Bank of Boston,* 568 F.2d 911, 921 (2d Cir. 1977)).

The Second Circuit has expressly held, "[t]he theme of the Bankruptcy Act is equality of distribution of assets among creditors, ... and correlatively avoidance of preference to some. ... The road to equity is not a race course for the swiftest." *Israel British Bank (London), Ltd. v. Federal Deposit Insurance Corp.,* 536 F.2d 509, 513 (2d Cir.), *cert. denied sub nom. Bank of the Commonwealth v. Israel-British Bank (London) Ltd.,* 429 U.S. 978 (1976).

The question of "what benefit, if any [the attaching creditors] should enjoy from having obtained" their Rule B attachments of Korea Line's assets should be left to the Korean Proceeding and the Korean Court supervising that proceeding. *See Atlas,* 404 B.R. at 737.

**C.  The Receivers are Entitled to Turnover of the Attached Funds Pursuant to §§ 1521(a)(5) and 1521(b)**

Once recognition is granted, relief under **§§** 1521(a)(5) and 1521(b) requires that the Court be satisfied that the interests of creditors in the United States are sufficiently protected.  As in *Atlas*, this standard is easily met because there are no U.S. based creditors with an interest in the Attached Funds.  *See Atlas*, 404 B.R. at 741.

To the extent applicable to the §1521 analysis, the additional factors set forth in § 1507 - (1)  just treatment of all holders of claims against interests in the debtor's property; (2) protection of claimholders in the United States against the prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; and (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by the United States Bankruptcy Code - also weigh in favor of turnover.

**1.  Just Treatment Will be Afforded to All Parties.**

Korea is a sophisticated hub of commercial and international finance activity with a sophisticated and practiced court system.  The provisions of the DRBA, which govern the insolvency of Korean entities, are comprehensive and equitable.  Further, as the Jung II and Lee II Declarations make clear, Korea's courts and the Korean Proceeding are open and fair: no party will be prejudiced by the fact that it is foreign-based.

U.S. courts have found that foreign insolvency regimes ranging from Serbian (*see In re Milovanovic,* 357 B.R. 250 (Bankr. S.D.N.Y. 2006)), to Italian (*In re Rosacometta, S.r.l,* 336 B.R. 557 (Bankr. S.D. Fla. 2005)) to Swedish (*Cunard*) and Bahamian (*Culmer*) would provide just treatment to creditors sufficient to merit a turnover order such as that requested here.  Thus, the first factor clearly weighs in the Receivers' favor.

### 2. U.S. Claimholders Will Not Be Inconvenienced.

World Fuel, Byatt and Yanam are not U.S. creditors. World Fuel is a Singapore entity; Byatt and Yanam are Liberian entities.

Nor can they plausibly claim that they will be inconvenienced by submitting their claims in the Korean Proceeding. As sophisticated shipping entities, knowingly negotiated their contracts with Korea Line, a Korean company. *See Culmer*, 25 B.R. at 632 ("This result [turnover] is altogether just and appropriate as these creditors dealt freely with [the foreign debtor] and were undoubtedly aware that they were dealing with a bank incorporated under and subject to foreign law when they first began doing business with [the foreign debtor]"). In so holding, Judge Lifland quoted at length from the Supreme Court's "declaration" in *Canada So. Ry. Co. v. Gebhard,* 109 U.S. 527, 537-38 (1883):

> [E]very person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes. To all intents and purposes, he submits his contract with the corporation to such a policy of the foreign government, and whatever is done by that government in furtherance of that policy, which binds those in like situation with himself, who are subjects of the government, in respect to the operation and effect of their contracts with the corporation, will necessarily bind him. He is conclusively presumed to have contracted with a view to such laws of that government, because the corporation must of necessity be controlled by them, and it has no power to contract with a view to any other laws with which they are not in entire harmony.

*Culmer*, 25 B.R. at 632.

### 3. Turnover will Prevent, Not Cause, the Preferential Disposition of Korea Line's Property.

Directing the turnover of the Attached Funds for administration in the Korean Proceeding is the only way to ensure that World Fuel, Yanam and/or Byatt do not gain an unfair advantage or improper preference over similarly situated creditors under Korean law.

Moreover, all of Korea Line's creditors will have the opportunity to be heard with respect to the treatment of their claim and/or the rehabilitation plan. The open nature of the proceedings, the direct supervision of any distribution by both the Korean Court and the comprehensive priority provisions of the DRBA are designed to eliminate the preferential or fraudulent disposition of Korea Line's property.

**4.** **U.S. and Korean Law are Substantially in Accord; the Korean Stay on Attachments is Entitled to Comity.**

United States and Korean law are also substantially in accord with respect to the mechanics of the rehabilitation plan approval and distributions. Each contemplates repayment and distribution plans voted on and accepted by secured and unsecured creditors.

It is well established that the priority rules of a foreign jurisdiction need not be identical to those of the United States. *See, e.g., In re Board of Directors Compania General Combustibles, S.A.,* 269 B.R. 104, 112 (Bankr. S.D.N.Y. 2001) (noting that to hold otherwise "would effectively end cooperation among countries because special interest priority schemes vary greatly around the world").[11]

Moreover, like the DRBA, section 362 of the Bankruptcy Code prohibits creditor attachments of a debtor's property upon the commencement of a bankruptcy case. In Korea, prior to commencement, (i.e. upon filing) Courts issue stay order akin to TRO's to protect a debtor's assets. Hence, Korean law and United States law are in accord.

It is equally clear that U.S. courts do not protect creditors who obtain attachments after the filing of an insolvency where such attachments violate applicable law. In the United States, such attachments would be a violation of the automatic stay. In the context of foreign

---

[11] *See also, In re Davis,* 191 B.R. 577, 587 (Bankr. S.D.N.Y. 1996) ("[i]n determining whether to accord comity to a foreign bankruptcy case, we need not find that the foreign law is identical to our own") and *In re Axona Intern. Credit & Commerce, Ltd.,* 88 B.R. 597, 610 (Bankr. S.D.N.Y. 1988), *aff'd,* 115 B.R. 442 (S.D.N.Y. 1990).

proceedings, Courts in the U.S. routinely grant comity to foreign stay orders. Under the circumstances turnover is appropriate here.

In *Victrix* and *Cunard*, the Second Circuit vacated attachments obtained after the commencement of a Swedish insolvency proceeding and in violation of the Swedish stay. As here, the *Cunard* creditors were general creditors of the debtor and the Second Circuit found no compelling reason why a general creditor should receive a preference over other creditors just because it filed an attachment in another jurisdiction. *See Cunard,* 773 F.2d at 459.

In *Milovanovic,* Serbian insolvency law provided that any post-insolvency attachments were void. A creditor of Milovanovic obtained an attachment of the debtor's bank account in New York after the commencement of the Serbian insolvency action. In vacating the attachment, the Court held that it was "not required to recognize an attachment that would be void under applicable foreign law." *See Milovanovic,* 357 B.R. at 256-57 & n. 8.

Finally, in *Atlas,* Danish law clearly stated that no attachments could levy against the debtor's assets after the bankruptcy was announced. A number of creditors obtained seven Rule B attachments of the Danish debtor's funds after the Danish proceeding had commenced. Relying on *Victrix, Cunard* and *Milovanovic* to vacate those seven attachments.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant the Receivers' request for the turnover of Attached Funds pursuant to 11 U.S.C. §§ 1521(a)(5), 1521(b) and 1507 for administration in the foreign main proceeding in Korea.

Dated: New York, New York
May 27, 2011

HOLLAND & KNIGHT LLP

By:  /s/James H. Power
James H. Power, Esq.
Barbra R. Parlin, Esq.
Warren E. Gluck, Esq.
31 West 52nd Street
New York, New York 10019
Tel.: (212) 513-3200
Fax: (212) 385-9010

*Counsel for the Petitioner,*
*the Receivers of Korea Line Corporation.*

#10371189_v1

17